Joseph OLZINSKI, Plaintiff,

v.

Rita MACIONA, David Schneider, Ureal Jordan, and Michael Sullivan, individually and as Agents of the Department of Health & Social Services, Division of Corrections, and Timothy Cullen, Secretary of Department of Health and Social Services, Defendants.

No. 88–C–479.

United States District Court, E.D. Wisconsin.

June 7, 1989.

William A. Pangman, Waukesha, Wis., for plaintiff.

Daniel S. Farwell, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION AND ORDER

CURRAN, District Judge.

Joseph Olzinski has commenced the above-captioned action against four agents of the Wisconsin Department of Health & Social Services, Division of Correction, Bureau of Community Corrections [1] and Timothy Cullen, former Secretary of the Department of Health and Social Services,[2] pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his rights guaranteed by the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution when he was arrested and detained for five days for an alleged probation violation. The plaintiff is suing the defendants in their official and individual capacities and is seeking:

A.  A declaratory judgment adjudging Wisconsin Administrative Code HHS 328.22 null and void;

B.  Preliminary and permanent injunctions enjoining and restraining the enforcement of the regulation above complained of;

C.  Preliminary and permanent injunctions enjoining and restraining defendants from further interference with plaintiff's exercise of his constitutional rights;

D.  Award to the plaintiff compensatory damages against all and each of the defendants, jointly and severally, in excess of $250,000.00; and

E.  Award punitive damages against each and all of the defendants, jointly and severally, in excess of $250,-000.00 and such other relief as to this Court seems just, proper and equitable.

1. The four employees of the Department of Health and Social Services are: Rita Maciona, a probation officer; David Schneider, a supervisor; Ureal Jordan, Regional Chief of the Bureau of Corrections; and Michael Sullivan, Deputy Administrator of the Division of Corrections. The record does not show any personal involvement of defendants Jordan, Sullivan, or Cullen in the events at issue here.

2. Although former Secretary Cullen is being sued in his official as well as personal capacity, the court takes notice of the fact that he is no longer serving as Secretary of the Department of Health and Social Services and the plaintiff has not moved to substitute his successor.

Civil Complaint at 6–7. If the plaintiff has alleged justiciable constitutional claims, this court would have jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331 and 1343(3).

The defendants answered, denying liability and asserting the defenses of immunity and preclusion. After the deadline for the completion of all discovery of fact witnesses had passed, the parties filed cross motions for summary judgment. These motions are now fully briefed and ready for decision.

## I.  FACTS

In connection with their motions the plaintiff and the defendants submitted proposed findings of fact. The undisputed facts, as compiled from both sides, are:

1. Plaintiff, Joseph Olzinski is an adult resident of Milwaukee County. On August 25, 1987, plaintiff was divorced from his ex-wife, Patricia.

2. On December 2, 1987, plaintiff was arrested for breaking into his ex-wife's residence and engaging in assaultive and disorderly conduct. Plaintiff was charged with violating section 943.14 of the Wisconsin Statutes (criminal trespass to dwelling) and section 904.01 of the Wisconsin Statutes (disorderly conduct).

3. On September 9, 1987, Milwaukee County Circuit Judge Arlene Connors enjoined plaintiff from having any contact with his ex-wife.

4. On December 9, 1987, plaintiff was convicted of the charges (criminal trespass to dwelling and disorderly conduct) in Milwaukee County Circuit Court, the Honorable Marvin C. Holz, presiding. Judge Holz placed plaintiff on eighteen months probation, ordered him to pay $50 in restitution and also ordered him to have no contact with the victim (his ex-wife).

5. Pursuant to the probation order, plaintiff was assigned to the supervision of Agent Daniel King of the Milwaukee Division of the Department of Corrections. On January 21, 1988, plaintiff met with Agent King for the first time.

6. Mr. King provided plaintiff with the Department of Corrections rules of supervision and orally explained what would be expected of him during the period of his probation. Agent King never informed plaintiff that a letter to a third party regarding his ex-wife would constitute a violation of either the rules of supervision or the court ordered provisions of his probation.

7. Sometime in January, 1988, plaintiff sent a letter to his ex-wife's employer, the Zablocki Medical Center. The undated letter stated that:

Dear Sir: I am in possession of one bottle of capoten obtained by my ex-wife without prescription from the Zablocki Medical Center on or about September 24, 1977. The bottle and contents are available as evidence.

Further, my ex-wife, Patricia Olzinski was in possession of capsules (approximately fifteen) that she described to me as her "suicide pills." She, I believe, obtained these illegally from the Zablocki Medical Center in June of 1977.

By copy of this letter (registered), I am reporting these alleged violations to the state Bureau of Regulation & Licensing and I have verbally contracted [sic] the federal drug enforcement authorities.

I expect this matter to be investigated, persons in violation of the law to be charged appropriately and that the state Bureau of Licensing & Regulation after investigation, bring proper disciplinary action.

I have lived with suicidal threats from my ex-wife for our entire marriage and find this letter necessary to do whatever may be possible to prevent a catastrophe as I take steps to annul our marriage within the Catholic Church. Signed Joseph S. Olzinski.

8. On February 15, 1988, plaintiff's letter came to the attention of defendant David Schneider, who is a supervisor in the Department of Health and Social Services Probation and Parole Office located at 1713 South Sixth Street in the city of Milwaukee, Wisconsin. Defendant Schneider was the supervisor of probation agent Daniel

King who up to that time had been plaintiff's probation agent. Agent King had recently gone on medical leave.

9. Defendant Schneider spoke with plaintiff's ex-wife, Patricia Olzinski, and concluded that she was frightened of plaintiff and was concerned that plaintiff might do something to her and her son.

10. Defendant Schneider assigned plaintiff's case file to defendant Rita Maciona who at that time was working as a probation and parole officer in the Sixth Street office. Defendant Schneider asked defendant Maciona to investigate the incident.

11. No one from the Department of Corrections contacted the Zablocki Medical Center to see if anyone there had received the letter.

12. On February 15, 1988, Agent Maciona placed a telephone call to plaintiff's house and spoke to Peggy Allen, a friend of Mr. Olzinski's. Agent Maciona directed Peggy Allen to tell Mr. Olzinski to contact her.

13. On February 15, 1988, Agent Maciona sent out a letter to plaintiff's home address advising him that he was currently in violation of his probation status and that it would be necessary for him to report to the probation office. The letter further stated that he should report on February 22, 1988, at 10:30 a.m. and warned that failure to report would result in issuance of a warrant for his arrest.

14. Defendant Maciona had determined that plaintiff's letter constituted a possible parole violation and that she was also concerned about plaintiff's ex-wife's safety.

15. Defendant Maciona, with defendant Schneider's approval, issued an apprehension request directing a law enforcement officer to take plaintiff into custody on what is called a probation hold.

16. On the morning of February 16, 1988, plaintiff contacted Agent Maciona in response to her phone call of February 15, 1988, and set up an appointment to meet with her on February 19, 1988.

17. On February 17, 1988, plaintiff received the February 15, 1988 letter which

Agent Maciona had written ordering him to report.

18. On February 17, 1988, plaintiff contacted Agent Maciona by telephone.

19. As a result of this phone conversation, the parties agreed to meet at 5:00 p.m. on Thursday, February 18, 1988, at the Milwaukee office of the Probation and Parole Department, at 1713 South Sixth Street in the City of Milwaukee, Wisconsin.

20. On February 18, 1988, Agent Maciona spoke with Patricia Olzinski for the first time. As a result of this conversation, she learned of the temporary restraining order which Judge Connors had ordered.

21. On February 18, 1988, at approximately 1:45 p.m., plaintiff was arrested at his place of employment by officers of the Town of Butler Police Department. The officers' authority for the arrest was the apprehension request issued by Agent Maciona.

22. The officers transported plaintiff to the Waukesha County Jail where he was incarcerated.

23. On February 19, 1988, plaintiff was brought before the Waukesha County Circuit Court, the Honorable Willis Zick, Circuit Judge, presiding, on a writ of habeas corpus. Plaintiff was represented by Attorney William Pangman. Defendant Maciona appeared as a witness and was subjected to cross-examination by plaintiff's attorney. Judge Zick found that plaintiff's apprehension and detention were lawful and dismissed the writ. Plaintiff did not appeal Judge Zick's decision.

24. Defendant Maciona visited plaintiff in the Waukesha County Jail on February 23, 1988. After discussing the incident with the plaintiff and taking his statement, she authorized his release from custody. *See* Proposed Findings of Fact (filed by the defendants on February 15, 1989) (citations omitted); Proposed Findings of Fact (filed by plaintiff on February 16, 1989) (citations omitted).

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), parties moving for summary judg-

ment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw–Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir. 1986). When faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by simply resting on his pleadings. If the nonmovant bears the burden of production on an issue at trial, he must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation*, 860 F.2d 1407, 1411 (7th Cir.1988).

A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A summary judgment procedure is not meant to be a trial on affidavits. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case

such as this, the record must show that a jury could find by a preponderance of the evidence that the party upon whom the burden of proof is imposed is entitled to a verdict in his favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If that party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Cross motions for summary judgment warrant the granting of summary judgment when the court finds that one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed. *See McLaughlin v. American Federation of Musicians*, 700 F.Supp. 726, 732 (S.D.N.Y. 1988).

■ In the instant case the disputed issues are legal rather than factual. The plaintiff is making claims against the defendant state officials in their official and personal capacities and is seeking equitable and declaratory relief as well as money damages. The Eleventh Amendment bars a suit for money damages from state officials sued in their official capacities.[3] *See Kentucky v. Graham*, 473 U.S. 159, 165–70, 105 S.Ct. 3099, 3104–08, 87 L.Ed.2d 114

---

3. In this case the defendants have failed to invoke the Eleventh Amendment bar as an affirmative defense. However, because the defense is jurisdictional, it can be raised at any time and the court will assume that the defendants do not

intend to waive the defense. *See Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); *Granados v. Reivitz*, 776 F.2d 180, 182–83 (7th Cir.1985).

(1985); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Brunken v. Lance,* 799 F.2d 337, 349–41 (7th Cir.1986). However, the Eleventh Amendment does not bar a suit for injunctive and declaratory relief brought against state agents in their official capacities and it does not bar a suit for money damages if the officials are sued in their personal capacities. *See Kentucky v. Graham,* 473 U.S. 159, 166–68, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Bennett v. Tucker,* 827 F.2d 63, 70–71 (7th Cir.1987). In this case claims for both types of relief have been properly asserted but the defendants, in turn, have asserted legal defenses which are potentially dispositive. Consequently, the threshold questions are whether the defendants in their personal capacities are entitled to qualified immunity from suit for money damages and whether the plaintiff has standing to seek declaratory and injunctive relief from the defendants in their official capacities.

### III. QUALIFIED IMMUNITY

The defendants argue that they are entitled to qualified immunity from suit on the claims for money damages because they "could not have reasonably known that their conduct violated any well established rights enjoyed by the plaintiffs." Brief of Defendants at 9. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Under this standard the court must conduct a two-part analysis by asking: (1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question? *See Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986). In considering these questions in the context of a motion for summary judgment, the court is not limited to the allegations in the plaintiff's complaint, but may consider all

of the undisputed evidence in the record, read in the light most favorable to the nonmovant. *See Green v. Carlson,* 826 F.2d 647, 650 (7th Cir.1987). Under the most recent rulings of the Seventh Circuit, the court is to decide the issue of qualified immunity even when facts are in dispute. *See Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988); *Rakovich v. Wade,* 850 F.2d 1180, 1201–02 (7th Cir.) (en banc), *cert. denied,* — U.S. ——, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

Once the issue of qualified immunity is properly injected into a case by a motion for summary judgment, the plaintiff bears the burden of demonstrating the existence of the allegedly "clearly established" constitutional right. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Alvarado v. Picur,* 859 F.2d 448, 452 (7th Cir. 1988); *Abel v. Miller,* 824 F.2d 1522, 1534 (7th Cir.1987). To meet this burden the plaintiff must show the existence of a right sufficiently particularized to have put potential defendants on notice that their conduct probably was unlawful at the time of the alleged violation. *See Anderson v. Creighton,* 483 U.S. 635, ——, 107 S.Ct. 3034, ——, 97 L.Ed.2d 523 (1987); *Conner v. Reinhard,* 847 F.2d 384, 388 (7th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987). The Seventh Circuit has explained that: "Closely analogous cases, decided before the defendant acted or failed to act, are often required to find that a constitutional or statutory right is clearly established. *See Kompare v. Stein,* 801 F.2d 883, 887 (7th Cir.1986). *See also Conner,* 847 F.2d at 388.

As set forth above, the plaintiff is asserting that his rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution were violated. In response to the defendants' invocation of the qualified immunity defense, Olzinski has cited no controlling authority, but has merely argued in generalized terms that:

A reasonable person would know that a person does not summarily seize and arrest someone, even a probationer, without investigating the factual basis behind the allegations made. A reasonable person would know that the First Amendment protects a person from being seized and arrested for the act of writing a letter. A reasonable person would know that jailing a person based on unsubstantiated allegations by that person's ex-wife would constitute cruel and unusual punishment. A reasonable person would allow a suspected violator to at least be put on notice and allowed the opportunity to answer the charge prior to seizing and jailing him. Finally, a reasonable person would know that applying a statute or administrative regulation in an arbitrary and unjust fashion would violate the rights of any person, and not just a probationer.

Plaintiff's Brief in Answer to Defendant's Motion for Summary Judgment at 6.

This approach directly contravenes the Seventh Circuit's position that:

> The words "clearly established ... constitutional rights" may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of a claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established right. The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.

*Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986).

**4.** In dismissing Olzinski's petition for a writ of habeas corpus, the Waukesha County Circuit Court judge found that:

> [W]hen Judge Holz said, "No more contact," a reasonable person could take the position that sending a letter to her employer is certainly in violation of the spirit and the intent of that restriction, that he was doing it to rattle her

## A. DUE PROCESS

In another section of his brief, Olzinski attempts to show that his Fifth and Fourteenth Amendment rights to procedural due process were abridged because he was not given prior notice of the conduct which could result in his being deprived of liberty; because he was not apprised of the nature of the suspected violation or given a hearing prior to being taken into custody; and because the defendants used hearsay as a basis for the arrest and detention. The court finds these contentions to be without merit.

The loss of liberty entailed in the revocation of probation requires that individuals be given fair warning of acts which may lead to revocation. *See United States v. Simmons*, 812 F.2d 561, 565 (9th Cir.1987). Accordingly, in this case the undisputed facts show that the Milwaukee County Circuit Court had issued an injunction against harassment restraining Olzinski from having "any contact" with his former wife. *See* Affidavit of David Schneider at Exhibits A & B. It is not unreasonable for the defendants to have construed this order as forbidding indirect contact or harassment which would include Olzinski's writing a letter to his former wife's employer accusing her of an eleven-year old "crime." [4] Regardless of the plaintiff's subjective contention that he had no notice, for purposes of qualified immunity the issue of whether the terms of probation afforded notice must be assessed objectively from the point of view of a reasonable probation official. Even if probation officials of reasonable competence could disagree as to whether the restraining order gives adequate notice that such conduct could be considered a violation, immunity must be recognized. *See Abel v. Miller*, 824 F.2d 1522, 1531 (7th Cir.1987).

cage and—not doing it in a bona fide effort to prevent drug problems, and so on, he was doing it to get her in trouble, which would be a violation of the Holz order and the Connor order.

Affidavit of Daniel S. Farwell Assistant Attorney General at ¶ 6, Attachment at 32–33.

As for his remaining due process claims, Olzinski has cited no authority for his proposition that the United States Constitution requires that a person on probation be given a prearrest hearing or that hearsay cannot form the basis for an apprehension request. *Cf. United States v. Warner*, 830 F.2d 651, 655 (7th Cir.1987) (rules against hearsay do not apply to probation revocation proceedings). Olzinski also complains that he was not told why he was being taken into custody prior to being taken to the Waukesha County Jail, but it is well-established that a person has no constitutional right to be informed of the charges against him prior to arrest. *See Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 3169 n. 3, 97 L.Ed.2d 709 (1987); *Richardson v. Bonds*, 860 F.2d 1427, 1430 (7th Cir.1988); *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir.1987).

In sum, the plaintiff has not met his burden of showing that the defendants violated any of his rights to due process in connection with this incident. Therefore, the defendants are entitled to qualified immunity from suit on the procedural due process claims.

### B. FOURTH AMENDMENT

The main thrust of the plaintiff's argument is that the defendants deprived him of his right under the Fourth Amendment to be free from an illegal arrest and detention. He claims that the defendants' authority for the arrest and detention was based on section HHS 328.22(2) of the Wisconsin Administrative Code which is vague, overbroad, and violative of the constitution; that the defendants failed to investigate the hearsay allegations prior to taking him into custody; and, that the defendants had insufficient cause to arrest and detain him.

In *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the United States Supreme Court ruled that a warrantless search of a probationer's residence was "reasonable" within the meaning of the Fourth Amendment because it was conducted pursuant to a valid state regulation governing probationers. *See Id.*, 107 S.Ct. at 3171. Olzinski was arrest-

ed pursuant to the authority conferred by section HHS 328.22(2) of the Wisconsin Administrative Code which provides that:

> A client may be taken into custody and detained: (a) for investigation of an alleged violation by the client; (b) after an alleged violation by the client to determine whether to commence revocation proceedings; (c) for disciplinary purposes; or (d) to prevent a possible violation by the client.

Wis.Admin.Code § HHS 328.22(2). The plaintiff contends that this subsection is unconstitutional. However, for purposes of this qualified immunity analysis Olzinski has the burden of showing that the defendants should have been aware that this Code provision was unconstitutional at the time of the arrest. The plaintiff has made no effort to meet this burden by showing that the Code provision had been declared invalid or that it is clearly unconstitutional under established law. Therefore, qualified immunity cannot be denied on this basis. *See generally Murray v. City of Sioux Falls*, 867 F.2d 472 (8th Cir.1989).

■ The remaining Fourth Amendment issues turn on the question of whether the defendants had sufficient cause to order Olzinski to be taken into custody and detained. The plaintiff contends that the defendants should have conducted a more thorough investigation before taking action, but it is well-established that law enforcement officials have no constitutional duty to keep investigating once they have a reasonable belief that arrest is warranted. *See Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir.1986). Moreover, the existence of sufficient cause for arrest precludes any section 1983 claim for unlawful arrest and detention. *See Mark v. Furay*, 769 F.2d 1266, 1268–69 (7th Cir.1985).

Under most circumstances, the Fourth Amendment (as incorporated by the Fourteenth) requires the states to provide a fair and reliable determination of probable cause as a condition for any significant restraint of liberty. *See Baker v. McCollan*, 443 U.S. 137, 142–43, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979). However, the Supreme Court has not addressed the

issue of whether a lesser quantum of proof can suffice when law enforcement officials seek to take a probationer into custody for a suspected violation of a condition of probation. *Cf. Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 3170, 97 L.Ed.2d 709 (1987) (stating that "the probation regime would ... be unduly disrupted by a requirement of probable cause to conduct a search"). Whatever the ultimate resolution of this issue, in this case the plaintiff appears to agree with the defendants' position that the standard should be whether an arrest made pursuant to section HSS 328.22(2) of the Wisconsin Administrative Code was "reasonable" under the circumstances. *See* Plaintiff's Brief in Answer to Defendant's [sic] Motion for Summary Judgment at 3; Brief in Support of [Plaintiff's] Motion for Summary Judgment and Liability at 10.

On the second day of his confinement in the Waukesha County Jail, Olzinski was granted a hearing on his petition for a writ of habeas corpus. In rendering his decision dismissing the petition, the state court judge found that the defendants had acted reasonably in taking Olzinski into custody and detaining him. *See* Affidavit of David S. Farwell at ¶ 6 & Attachment at 32. Olzinski did not appeal the judgment of dismissal, so the defendants now contend that he is collaterally estopped from relitigating the issue of whether his arrest and detention were reasonable.

■ A federal court must give the same preclusive effect to a state court ruling as would a court in the rendering state. *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Therefore, the Wisconsin rules governing collateral estoppel apply to this case. Wisconsin law bars parties from relitigating issues that were "litigated, determined, and necessary to the decision in the prior proceeding." *Reckner v. Reckner*, 105 Wis.2d 425, 436, 314 N.W.2d 159, 165 (Ct.App.1981) (citing *State ex rel. Flowers v. Department of Health & Social Services*, 81 Wis.2d 376, 387, 260 N.W.2d 727, 734 (1978). Wisconsin courts do not require a mutuality of

parties where collateral estoppel is "asserted defensively to prevent a party from relitigating an issue which has been conclusively resolved against that party in a prior case." *Crowall v. Heritage Mutual Insurance Company*, 118 Wis.2d 120, 125, 346 N.W.2d 327, 330 (Ct.App.1984). Therefore, Wisconsin would give preclusive effect to state court determinations on issues that were: (1) identical; (2) actually litigated; and (3) necessary to the state court's final judgment. *See Schneider v. Mistele*, 39 Wis.2d 137, 140 n. 5, 158 N.W.2d 383, 384 n. 5 (1968); *Reckner*, 105 Wis.2d at 436, 314 N.W.2d at 165. A corollary to these requirements is that the party being precluded must have had a fair opportunity procedurally, substantively, and evidentially to litigate his claim in the first proceeding. *See Crowall*, 118 Wis.2d at 126, 346 N.W.2d at 331.

The defendants have not cited any Wisconsin authority holding that a finding in a habeas corpus proceeding bars a relitigation of the same factual issue by a petitioner who does not prevail. Nevertheless, the finding of the Waukesha County Circuit Court fits the criteria for the application of collateral estoppel. The issue of whether taking Olzinski into custody and detaining him was reasonable under the circumstances known to the probation officials is identical to the issue raised in the state habeas proceeding; the issue was actually litigated; and, a resolution of the issue was necessary to the state court's final judgment which was not appealed by Olzinski. The plaintiff, who was represented by counsel throughout the habeas proceeding, does not claim that he did not have a full and fair opportunity to litigate the issue of the reasonableness of the probation officials' actions during the state hearing. Rather, he contends that he should not be precluded from maintaining this lawsuit because he was not able to bring a claim for money damages in the state court action. But while the doctrine of res judicata would not prevent Olzinski from maintaining a section 1983 action for money damages had he prevailed in the habeas proceeding, the doctrine of collateral estoppel will not permit him to relitigate the

reasonableness issue which he lost in the state court no matter what form of relief he is seeking. Thus, under Wisconsin law, the defendants are entitled to estop the plaintiff from relitigating the issue of whether they had sufficient cause to arrest and incarcerate the plaintiff. *Cf. DeRochemont v. Commissioner,* 628 F.Supp. 957, 961 (N.D.Ind.) (a finding in a proceeding under 28 U.S.C. § 2255 estops a petitioner from relitigating same issue in section 1983 action), *aff'd,* 808 F.2d 837 (7th Cir.1986). Consequently, because the finding of the state court establishes that the arrest and detention of Olzinski was reasonable, the plaintiff has been unable to establish that the defendants violated any of his substantive rights protected by the Fourth Amendment.

## C. FIRST, EIGHTH AND NINTH AMENDMENTS

Olzinski claims that his First Amendment rights were violated because he was arrested for exercising his freedom of expression by writing a letter to his former wife's employer accusing her of taking prescription drugs from her place of employment some eleven years earlier. The defendants did not take the trouble to address this issue in their briefs. Still, it is the plaintiff's burden to show that this conduct violated a clearly established right protected by the First Amendment and the plaintiff has failed to meet this burden.

The defendants promulgated no regulation imposing a prior restraint on the plaintiff's freedom of speech and he was subject to no order forbidding him to correspond. *Cf. Owen v. Lash,* 682 F.2d 648 (7th Cir. 1982). Instead, the record shows that the defendants requested that Olzinski be taken into custody after he had written a letter which they believed violated a court-issued "no contact" order. The plaintiff has been unable to show any authority for his theory that this course of action violated law clearly established under the First Amendment. Therefore, the defendants are entitled to qualified immunity from suit on this claim.

The plaintiff is also claiming that the defendants subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights. However, the "cruel and unusual" punishment of which he complains is the confinement itself, not any conditions of confinement. Therefore, his Eighth Amendment claim is merely a reiteration of the cause of action he has attempted to bring under the Fourth, Fifth and Fourteenth Amendments and need not be considered separately.

■ Finally, the complaint asserts a claim under the Ninth Amendment. This claim has not been reiterated in the plaintiff's motion for summary judgment, so the court could consider the claim abandoned. In any case, the Ninth Amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim. *See Strandberg v. City of Helena,* 791 F.2d 744, 748 (9th Cir.1986); *Quilici v. Village of Morton Grove,* 695 F.2d 261, 271 (7th Cir.1982), *cert. denied,* 464 U.S. 863, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983); *O'Donnell v. Village of Downers Grove,* 656 F.Supp. 562, 569 (N.D.Ill.1987); *Grossman v. Gilchrist,* 519 F.Supp. 173, 176 (N.D.Ill. 1981), *aff'd,* 676 F.2d 701 (7th Cir.1982). The Supreme Court has repeatedly voiced concern that a section 1983 claim be based on a specific constitutional guarantee. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). In this case the plaintiff has failed to identify any fundamental right implicitly guaranteed by the Ninth Amendment which the defendants abridged. Therefore, he cannot maintain any claim under the Ninth Amendment.

## D. PERSONAL CAPACITY CLAIMS

In sum, the plaintiff has failed to show that he is entitled to maintain any of his claims for money damages against the defendants in their personal capacities. The defendants are entitled to qualified immunity from suit on the claims brought under the First, Fourth, Fifth and Fourteenth Amendments and the plaintiff has failed to state claims under the Eighth and Ninth

Amendments upon which relief can be granted. Therefore, summary judgment will be granted as a matter of law in favor of the defendants on all the claims against the defendants in their personal capacities. *See* Federal Rules of Civil Procedure 12(b)(6) & 56.

## IV. STANDING

■ In his own motion for partial summary judgment, Olzinski asks for a judgment of liability[5] and asks the court to declare that section HHS 328.22(2) of the Wisconsin Administrative Code is unconstitutional on its face and as applied to him because it is unreasonable and unconstitutionally vague and overbroad. The plaintiff is also seeking an injunction restraining the defendants from enforcing section HHS 328.22(2) and from further interference with his constitutional rights. The parties have submitted supplemental briefs addressing the issue of whether the plaintiff has standing to maintain these claims for declaratory and injunctive relief.

■ The record indicates that Olzinski should complete his eighteen-month sentence of probation in June of 1989. He has not been able to show that there has been a continuing violation of his rights or that there is a real and immediate threat that he will be taken into custody for another probation violation. Although Olzinski predicts that he could again be subjected to an arbitrary arrest, speculation is insufficient to establish the existence of a present, live controversy. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983). It is not reasonably certain that Olzinski will again be taken into custody unless he deliberately violates his conditions of probation—and he cannot establish standing by claiming that he intends to violate a court order. *See Mann v. Hendrian*, 871 F.2d 51, 53 (7th Cir.1989). Nor can he claim that this is a situation which is capable of repetition, yet evading review. This doctrine applies only when repetition is likely to embroil the same parties to the dispute. *See Holmes v. Fisher*, 854 F.2d 229, 232 (7th Cir.1988).

Because Olzinski can show only past exposure to allegedly unconstitutional state action, he has standing to seek compensation through money damages, but he does not have standing to seek injunctive relief.[6] *See Robinson v. City of Chicago*, 868 F.2d 959, 966–68 (7th Cir.1989). Therefore, because Olzinski's claims for declaratory and injunctive relief do not present a live case or controversy, these claims must be dismissed.

## ORDER

For the reasons explained above, the court ORDERS that the Defendants' Motion for Summary Judgment (filed February 15, 1989) IS GRANTED. Summary judgment is granted in favor of the defendants on the plaintiff's claims brought against the defendants in their personal capacities. The claims for declaratory and injunctive relief brought against the defendants in their official capacities are dismissed because the plaintiff lacks standing to assert these claims.

IT IS FURTHER ORDERED that the plaintiff's Motion for Summary Judgment on Liability (filed February 15, 1989) IS DENIED.

IT IS FURTHER ORDERED that this action IS DISMISSED on its merits.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter judgment as a separate document. The judgment shall provide that:

> This action came on for a hearing on briefs before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly

---

5. The plaintiff's motion for a judgment of liability will be denied for the same reasons that the defendants' motion for summary judgment is being granted.

6. The same standard applies to a plaintiff's claim for declaratory relief. The declaratory relief statute is not an independent basis of jurisdiction and requires an "actual controversy." *See Robinson v. City of Chicago*, 868 F.2d 959, 966 n. 5 (7th Cir.1989).

heard and a decision having been rendered

IT IS ORDERED AND ADJUDGED

that summary judgment is entered in favor of defendants Rita Maciona, David Schneider, Michael Sullivan, Ureal Jordan and Timothy Cullen in their individual capacities on all plaintiff Joseph Olzinski's claims for money damages;

IT IS FURTHER ORDERED that plaintiff Joseph Olzinski's claims for declaratory and injunctive relief against defendants Rita Maciona, David Schneider, Michael Sullivan, Ureal Jordan and Timothy Cullen in their official capacities are dismissed.

IT IS FURTHER ORDERED that this action is dismissed on its merits and that the parties shall bear their own costs of this action.

Done and Ordered.