776 F.2d 180
 11 Soc.Sec.Rep.Ser. 193, Medicare&Medicaid Gu 34,969
Virginia GRANADOS, Personal Representative of the Estate of
Joseph Gruber, individually and on Behalf of all
others similarly situated, Plaintiff- Appellant,
v.
Linda REIVITZ, individually and as Secretary of the
Wisconsin Department of Health and Social Services, and
Donald E. Percy, individually and as former Secretary of the
Wisconsin Department of Health and Social Services,
Defendants-Appellees.
 No. 84-3106.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 3, 1985.
Decided Oct. 31, 1985.
 
 Robert G. Dowling, Shniedman, Myers, Dowling, Blumenfield & Albert, Milwaukee, Wis., for plaintiff-appellant.
 Donald P. Johns, Wis. Dept. of Justice, Madison, Wis., for defendants-appellees.
 Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and WRIGHT, Senior Circuit Judge.*
 EUGENE A. WRIGHT, Senior Circuit Judge.
 
 
 1
 The most challenging questions in this social security eligibility dispute center around our jurisdiction. Although questions of mootness and class representation also surfaced at oral argument, we find that the eleventh amendment prohibits this class action.
 
 FACTS
 
 2
 Medicaid, under Title XIX of the Social Security Act, establishes two eligibility groups for medical assistance: categorically needy and medically needy. Wisconsin participates in both programs. Wis.Stats. Secs. 49.46, 49.47 (1979-80). In 1972, Congress substituted Supplementary Security Income for the Aged, Blind and Disabled (SSI), 42 U.S.C. Sec. 1381 et seq., for three of the four categorically needy programs.
 
 
 3
 SSI persons qualify automatically for medical assistance. Because this increased the Medicaid burden on states, the federal government gave the states the option of limiting their welfare plans to pre-SSI eligible persons. 42 U.S.C. Sec. 1396a(f). States choosing this option became known as Sec. 209(b) states. See Schweiker v. Gray Panthers, 453 U.S. 34, 38-39, 101 S.Ct. 2633, 2637-38, 69 L.Ed.2d 460 (1981). Wisconsin is such a state.
 
 
 4
 Until 1981, states were required to provide reasonable eligibility standards for medical assistance which were comparable for all groups. 42 U.S.C. Sec. 1396a(a)(17); 42 U.S.C. Sec. 1396a(a)(10)(C)(i). The regulations required that states not use more restrictive eligibility requirements for optional groups than those used under SSI. 42 C.F.R. Sec. 435.401 (1980).[1]
 
 
 5
 42 U.S.C. section 1396a(a)(17)(B) further requires a state to take into account only such assets as are available to the applicant to determine eligibility.
 
 
 6
 On December 28, 1980, Congress passed the Boren-Long Amendment, Pub.L. No. 96-611, Sec. 5(c), 94 Stat. 3567, 3568 (1980), codified at 42 U.S.C. Sec. 1382b(c). Section 5(a), amending the SSI portion of the Social Security Act, provides that resources disposed of for less than fair market value within 24 months prior to application must be considered as available to the applicant for determining eligibility for benefits. The effective date of section 5(a) was March 1, 1981.
 
 
 7
 Section 5(b) of the Amendment enables the states to use the same exclusion when determining eligibility for Medicaid. 42 U.S.C. Sec. 1396a(j), repealed by Pub.L. No. 97-248, Sec. 132(c), 96 Stat. 2408 (1982). That section took effect July 1, 1981. Boren-Long Amendment, Pub.L. No. 96-611, Sec. 2, 94 Stat. 3566, 3567 (1980); Beltran v. Myers, 451 U.S. 625, 627, 101 S.Ct. 1961, 1963, 68 L.Ed.2d 495 (1981) (per curiam).
 
 
 8
 In response to the Boren-Long Amendment, Wisconsin adopted an Emergency Rule, providing:
 
 
 9
 Divestment by any person within 2 years prior to the date of making application for aid shall, unless shown to the contrary, be presumed to have been made in contemplation of receiving aid and shall create ineligibility for this aid until the value of the divested amount is expended by or on behalf of the person's maintenance need and medical care.
 
 
 10
 Wis.Admin.Code Sec. HSS 103.12 (1981). This case arises from a challenge to the state's attempt to enforce the rule before July 1, 1981.
 
 
 11
 Joseph Gruber applied for medical assistance benefits under Title XIX of the Social Security Act on March 5, 1981, through the Wisconsin Department of Health and Social Services (DHSS). Approval of the application was later rescinded under the Emergency Rule because he had disposed of assets for less than fair market value within two years prior to his application. The administrative review board of DHSS affirmed, holding that although the Emergency Rule was effective on its face on March 7, as a matter of DHSS policy, it was effective as of March 3, 1981.
 
 
 12
 The Milwaukee County Circuit Court affirmed as to divestment of some of Gruber's assets. In an unpublished opinion of May 25, 1984, the Court of Appeals reversed, holding that the operative date of the Boren-Long Amendment was July 1, 1981, and the states could not enforce divestment legislation prior to that date. The court held further that the applicable date of the Emergency Rule was March 7, 1981, but that question was mooted by its decision on the Boren-Long issue.
 
 
 13
 While the state court actions were pending, Gruber died and his daughter was substituted as personal representative of the estate. She filed this class action challenging the constitutionality of the Emergency Rule's application prior to July 1, 1981. She also sought notice to the class members.
 
 
 14
 The district court, on stipulation by the parties, conditionally certified a plaintiff class of all those who were otherwise eligible for medical assistance and applied or would have applied between January 1, 1981, and June 30, 1981, and whose applications were denied by operation of the Emergency Rule. This order was entered on June 20, 1984.[2]
 
 
 15
 On September 14, 1984, the district court granted plaintiff's motion for summary judgment in part and denied it in part. It held that class members who had filed applications prior to March 7, 1981, the effective date of the Emergency Rule, were eligible for assistance. Those applying between March 7 and June 30 were ineligible because section 5(a) of the Boren-Long Amendment implicitly allowed the states to enforce divestment rules as of March 1, 1981.[3]
 
 ANALYSIS
 
 16
 We reach and decide the eleventh amendment issue even though the parties failed to raise it below because the "defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court...."[4] Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974).
 
 
 17
 In a recent case, the Fifth Circuit confronted the eleventh amendment as a jurisdictional bar and held: "The [defendant] failed to raise the eleventh amendment before the district court. However, because this argument challenges the extension of the judicial power of the United States to this suit, it may be raised at any point during the proceedings." McKay v. Boyd Const. Co., Inc., 769 F.2d 1084, 1086 (5th Cir.1985) (citing Edelman, supra).
 
 The eleventh amendment provides:
 
 18
 The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by the Citizens or Subjects of any Foreign State.
 
 
 19
 Based on the principles underlying federalism, Atascadero State Hospital v. Scanlon, --- U.S. ----, ----, 105 S.Ct. 3142, 3145-46, 87 L.Ed. 2d 171 (1985), it "strips federal courts of the power to entertain suits against nonconsenting states, whether brought by their own citizens or by citizens of other states." Jensen v. State Bd. of Tax Comm'n of State of Ind., 763 F.2d 272, 276 (7th Cir.1985); Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); see also Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (state is the real party in interest when the action is in essence for the recovery of money from the state, even though individual officials are nominal defendants).
 
 
 20
 Edelman v. Jordan made clear that a declaratory and injunction action against a state is barred by the eleventh amendment to the extent that the court decree would order retroactive payments of benefits wrongfully withheld. 415 U.S. at 678, 94 S.Ct. at 1363. In this case it is clear that any relief granted to the plaintiff class must necessarily involve retroactive benefits.
 
 
 21
 We have determined retroactivity by the date on which the state came under a court-imposed obligation. See Buckhanon v. Percy, 708 F.2d 1209, 1216 (7th Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984). We need not employ such a bright line here. Because the Boren-Long Amendment became effective July 1, 1981, relief could necessarily affect only those who applied before June 30, 1981. The Emergency Rule says that divestment is no longer a barrier to eligibility after two years.[5] Since the complaint in this action was filed on December 1, 1983, these plaintiffs could have reapplied without any consideration of prior divested assets as of June 30, 1983. Therefore, no prospective relief was ever contemplated.
 
 
 22
 There are exceptions to the eleventh amendment, none of which apply here. The state may waive its sovereign immunity and consent to suit in federal court but it must do so expressly or "by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. at 673, 94 S.Ct. at 1366 (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). An unequivocal expression of congressional intent to abrogate the state's sovereign immunity under section 5 of the fourteenth amendment will be given effect. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).
 
 
 23
 We were unable to find and the parties have not shown us any indication that Wisconsin has abrogated its sovereign immunity for this type of federal action. Article IV, section 27, of its constitution has consistently been construed by the Wisconsin courts to mean that the state may not be sued without its consent. Zinn v. State, 112 Wis.2d 417, 424, 334 N.W.2d 67, 75 (Wis.1983). No clear expression of such intent is to be found in Wisconsin statutes. See id. (state immunity is a question for the legislature).
 
 
 24
 Nor were we able to find in the Social Security Act any indication of congressional intent to waive the state's immunity to suit in federal court. See Buckhanon, 708 F.2d at 1216. An expression of congressional intent to upset the balance created by the eleventh amendment must be explicit, Atascadero State Hospital, 105 S.Ct. at 3148, and is lacking here.
 
 
 25
 Finally, receipt of federal funds under the SSI program is insufficient to infer consent to be sued in federal courts. See id. at 3149.
 
 CONCLUSION
 
 26
 This action, although couched in declaratory and injunctive relief terms, seeks purely retrospective damages from a state. As such, it is prohibited by the eleventh amendment.
 
 
 27
 Vacated and remanded with instructions to dismiss for lack of jurisdiction.
 
 
 
 *
 Honorable Eugene A. Wright, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, is sitting by designation
 
 
 [1]
 The regulation itself appears limited to the aged, blind or disabled. However, this regulation and the regulations in total have consistently been interpreted to require uniformity in eligibility requirements for all sub-groups. Caldwell v. Blum, 621 F.2d 491, 497 (2d Cir.1980), cert. denied, 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981)
 
 
 [2]
 The mootness issue here is intriguing. The representative plaintiff had obtained relief in state court but had not obtained a final determination of the amount owed her and had an appeal pending when the class was certified
 A literal reading of Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975), indicates that mooting of the named plaintiff's cause of action before certification ends the Article III case or controversy. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 398-401, 100 S.Ct. 1202, 1209-11, 63 L.Ed.2d 479 (1980), casts doubt on the bright line application of Sosna and interjected a flexible approach to questions of justiciability. 445 U.S. at 400-01 & n. 7, 100 S.Ct. at 1210-11 & n. 7.
 The dissent in Geraghty notes that, "[t]he essential and irreducible constitutional requirement is simply a nonfrivolous showing of continuing or threatened injury at the hands of the adversary." 445 U.S. at 412, 100 S.Ct. at 1216 (Powell, J., dissenting). The "case or controversy" requirement is not flexible but rooted in the Constitution.
 Were it necessary, we would have to decide when the named plaintiff's claims became moot and reconcile the conflicting Supreme Court authorities. Because we decide that this suit is barred by the eleventh amendment, we need not enter this maze.
 
 
 [3]
 Assuming that Granados jumped the mootness hurdle, we would be faced with the question whether she is the proper representative party for the only subclass on appeal. Her father had applied on March 5 so technically she received the relief she sought below. The questions regarding certification and representation, see Kremens v. Bartley, 431 U.S. 119, 129-33, 97 S.Ct. 1709, 1715-17, 52 L.Ed.2d 184 (1977), are left for another day
 
 
 [4]
 Other courts have not dealt with the eleventh amendment issue in this context. We assume that either it was not applicable because the parties were not seeking retrospective monetary relief, see, e.g., Randall v. Lukhard, 709 F.2d 257, 261, 270 (4th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984), or the issue was not before the court. See Beltran v. Myers, 451 U.S. 625, 629 & n. 2, 101 S.Ct. 1961, 1964 & n. 2, 68 L.Ed.2d 495 (1981) (Stevens, J., concurring)
 
 
 [5]
 Section (6)(a) of the Rule provides:
 Divestment shall no longer be a barrier to eligibility when: the entire sum of the divestment has been expended for maintenance needs and medical care or two years have elapsed since the act of divestment, whichever occurs first.