**Gary VICKERY, Plaintiff,**

v.

**Genelle JONES, et al., Defendants.**

**No. 93–CV–4030–JLF.**

United States District Court,
S.D. Illinois.

March 7, 1995.

Mary L. Leahy, Leahy Law Offices, Springfield, IL, for plaintiff.

Charles R. Schmadeke, Asst. Atty. Gen., State of Ill., Springfield, IL, Jeffrey D. Col-man, Edward J. Lewis, II, Katherine J. Dickinson, Melissa S. Widen, Jenner & Block, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

FOREMAN, District Judge:

Before the Court are: (1) defendants' motion to modify the Court's Order of January 19, 1994, to preserve documents and other materials (Document No. 74); (2) defendants' motion for interlocutory appeal (Document No. 83); (3) plaintiff's motion for leave to amend his complaint (Document No. 85); (4) plaintiff's motion for leave to withdraw his motion for leave to amend (Document No. 95); and (5) defendants' motion for judgment on the pleadings (Document No. 99).

As a preliminary matter, the Court notes that plaintiff's motion for leave to amend (Document No. 85) is styled "Motion To File Second Amended Complaint." However, plaintiff's Second Amended Complaint is already part of the record. Document No. 97. Therefore, the Court construes the motion for leave to amend as a request for leave to file a third amended complaint. As the defendants have no objection to the plaintiff withdrawing the motion to amend his complaint (Document No 96, at 1, 4), the Court GRANTS plaintiff's motion to withdraw his motion for leave to amend his complaint (Document No. 95). Therefore, the plaintiff's second amended complaint (Document No. 97) is before the Court for purposes of considering defendants' motion for judgment on the pleadings. This action was filed pursuant to 42 U.S.C. §§ 1983 and 1988 and, therefore, the Court has jurisdiction under 28 U.S.C. § 1343.

## I. Background

Plaintiff's complaint alleges that the defendants violated his First and Fourteenth Amendment rights when, on the basis of plaintiff's political affiliation, they failed to rehire him as a temporary highway maintainer. Plaintiff also contends that the defendants' use of the six-month contract for the position of highway maintainer violates the Illinois Personnel Code, 20 Ill.Comp.Stat.

415/1–415/19c.1, and is a scheme to circumvent the Supreme Court's decision in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Document No. 7 at 5. The defendants have conceded that they considered applicants' political affiliation when hiring temporary highway maintainers. Document No. 98 at 9–12.

In a prior Order of July 6, 1994, *Vickery v. Jones,* 856 F.Supp. 1313 (S.D.Ill.1994), (Document No. 80, "July 6 Order") this Court granted in part and denied in part the defendants' motion to dismiss plaintiff's complaint. The Court granted class certification to include those persons denied employment as temporary and permanent highway maintainers because of their political affiliation. *Id.* at 1330. In addition, the Court ruled that the Supreme Court's decision in *Rutan* applies to temporary state employees. However, the Court ruled out the possibility of a monetary damages award when it granted the state officials qualified immunity; therefore, only equitable remedies are still available to the plaintiff class.[1] *Vickery,* 856 F.Supp. at 1327, Document No. 80 at 28.

The Court also granted a motion to dismiss by Saline County Republican Central Committee and its chairman on the ground that their First Amendment right to political association shielded them from liability under § 1983. *Id.* at 1319–20, Document No. 80 at 8. Plaintiff's subsequent motion to reconsider that ruling was denied. Document No. 117.

Since the July 6 Order, defendants have taken action to end the policy of considering political affiliation in the selection of temporary employees. Governor Edgar's chief counsel issued a new policy to all agency directors and their chief legal counsel, prohibiting the hiring or firing of temporary employees based on political affiliation. Answer of the State Officials to the Second Amended Complaint, Document No. 98, Ex. A. The manager of the Bureau of Personnel for the Department of Central Management Services issued a memorandum to all agency personnel managers stating that "temporary appointments, emergency appointments, trainee student worker appointments and other employment of a temporary nature, regardless of its duration, cannot be based on political affiliation or support unless such appointments are to carry out duties and responsibilities of a *Rutan* exempt position." *Id.,* Ex. B.

IDOT also established new procedures to fill vacant temporary highway maintainer positions, including the posting of available temporary highway maintainer positions at more than 100 IDOT facilities around the state. *Id.,* Ex. C. Additionally, an application and evaluation process was established that does not consider political affiliation. *Id.,* Ex. F. As a result of these efforts, defendants claim that the violations the Court addressed in its July 6 Order have all been corrected, therefore, the case is moot (Document No. 98 at 17) and the Eleventh Amendment bars any further claim for relief because there is no ongoing violation of federal law. Document No. 98, Document No. 99 at 2, 3.

■ The defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12. *Craigs, Inc. v. General Elec. Capitol Corp.,* 12 F.3d 686 (7th Cir.1993). Under Rule 12(c), the Court's review is limited to the pleadings. *Republic Steel Corp. v. Pennsylvania Eng'g Corp.,* 785 F.2d 174, 177–78 (7th Cir.1986). Viewing the facts in the light most favorable to the nonmoving party, the Court will not grant the motion "unless it appears beyond doubt that

1. The relief requested by plaintiff includes: (1) an injunction prohibiting defendants from hiring highway maintainers based on political affiliation; (2) a declaration that the use of the six-month contract for the position of highway maintainer was a deliberate attempt to circumvent the Supreme Court ruling in *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); (3) instatement of plaintiff in a position of highway maintainer at the Illinois Department of Transportation ("IDOT") Harrisburg shed; and (4) a declaration that awarding six-month contracts for the position of highway maintainer violates and subverts the provisions of the Illinois Personnel Code, 20 Ill.Comp.Stat. 415/1–415/19c.1, and order that the awarding of such contracts cease. *Id.* at 12.

the plaintiff cannot prove any facts that would support his claim for relief." *Id.* (quoting *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989)). For purposes of defendants' motion, all well-pleaded allegations of the complaint must be taken as true. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984).

## II. State Law Claim

■ The supplemental state law claim in Count II of plaintiff's complaint alleges that the defendants used six-month contracts for temporary highway maintainers to avoid the requirements of the Illinois Personnel Code, 20 Ill.Comp.Stat. 415/1–415/19c.1. In essence, this is a claim that state officials have initiated a state policy that violates state law. Assertion of supplemental jurisdiction over such a claim by a federal court is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Plaintiff concedes that defendants' motion should be granted with respect to Count II. Document No. 108 at 1. Accordingly, defendants' motion for judgment on the pleadings with respect to Count II of plaintiff's second amended complaint is **GRANTED.**

## III. Mootness

■ The defendants raise the affirmative defense that "[a]ll claims for injunctive and declaratory relief on Count I are moot...." Document No. 98 at 17.[2] The issue of whether there is still a case or controversy under Article III of the Constitution arises as a result of the defendants' claim that they have ceased using political affiliation as a criterion in the hiring of temporary highway maintainers. Specifically, the defendants contend

that the measures taken by the State Officials since the Court's July 6 Order "unquestionably put the State's personnel policies in full compliance with federal law. As a result, there is no jurisdictional basis for the injunctive or declaratory relief requested in Count I." Document No. 100 at 7.[3]

■ However, voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice. *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *see also City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982); *United States v. Concentrated Phosphate Export Ass'n, Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); *Kikumura v. Turner,* 28 F.3d 592, 597 (7th Cir.1994), *petition for cert. denied,* —— U.S. ——, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1994); *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991). Voluntary cessation of the challenged activity "is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." *City of Mesquite,* 455 U.S. at 289, 102 S.Ct. at 1074.

■ The defendants' burden of proving mootness "is a heavy one." *Kikumura,* 28 F.3d at 597 (quoting *W.T. Grant Co.,* 345 U.S. at 633, 73 S.Ct. at 897–98). If voluntary cessation were treated as mooting a case, any government official being sued "could cease a challenged practice to thwart the lawsuit, and then return to old tricks once the coast is clear." *Magnuson,* 933 F.2d at 565. "The case is not moot unless there is reasonable

---

**2.** In documents submitted subsequent to their answer, the defendants contend that they never argued that the case is moot. Document No. 112 at 7 and Document No. 122 at 2. Regardless of whether the defendants raised the issue, did not raise the issue, or inadvertently raised the issue, it is incumbent upon the Court to determine whether there is still a case or controversy, as the Court lacks jurisdiction to hear moot cases. *Enrico's Inc. v. Rice,* 730 F.2d 1250 (7th Cir.1984) (citing *SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972)).

**3.** The defendants made this statement in support of their claim that an award of equitable relief is barred by the Eleventh Amendment. However, asserting that the Court lacks jurisdiction because the challenged conduct has ceased is also applicable to the claim that the case is moot. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), and cases cited therein.

assurance that the questioned conduct will not be resumed." *Watkins v. Blinzinger,* 789 F.2d 474, 483, *cert. denied, sub nom. Diamond v. Blinzinger,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

In *Kikumura,* 28 F.3d at 597, the Seventh Circuit did not find moot a claim challenging a prison policy that prohibited foreign language materials even though the policy had been repealed. The court noted that the prison's policy had "ebbed and flowed" throughout the course of litigation. *Id.* As a result, the government failed to meet its "heavy burden" of proving that there was "no reasonable likelihood that it will reinstitute the challenged policy." *Id.*

■ Even the repeal or amendment of a statute may not be sufficient to render a constitutional challenge to the statute moot. *Charles v. Daley,* 749 F.2d 452 (7th Cir.1984), *appeal dismissed, sub nom. Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986). In *Daley,* the Seventh Circuit found a live controversy even though the challenged statute had been amended to remove the alleged constitutional infirmity. The court considered the possibility that the legislature could re-enact the challenged portion of the statute enough to preclude mootness. *Id.* at 458; *but see Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir.1988), *appeal dismissed, Turnock v. Ragsdale,* 503 U.S. 916, 112 S.Ct. 1309, 117 L.Ed.2d 510 (1992) (finding that challenge to portion of statute moot where defendants conceded that

statutory section at issue was unconstitutional).

The Supreme Court addressed a similar situation in *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), where a challenged ordinance had been repealed while the case was pending in the Court of Appeals. The Court noted that "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* at 289, 102 S.Ct. at 1074-75. The city had announced just such an intention. *Id.* n. 11.[4]

In the case at hand, the defendants changed the hiring policy in response to the Court's July 6 Order. Furthermore, they have not stated that the new hiring policy is permanent.[5] Accordingly, the Court finds that this case is not moot. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983) (holding that case was not moot because moratorium on challenged activity by its own terms was not permanent); *Watkins v. Blinzinger,* 789 F.2d 474, 483 (7th Cir.1986), *cert. denied, sub nom. Diamond v. Blinzinger,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987) (observing that mootness claim weak because the state had not pledged to retain new policy).

## IV. The Eleventh Amendment Claim

■ The defendants argue that the Eleventh Amendment [6] bars declaratory and

4. *See also Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied, sub nom. Clements v. Logan,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). The district court's denial of declaratory and injunctive relief against strip-search policy was overturned even though the policy had been revised on a trial basis at the time of the decision. The Court ordered a decree declaring the policy unconstitutional as it was stipulated to exist at the time of plaintiff's strip search. *Id.* at 1013.

5. During two separate conference telephone calls, the defendants have indicated to the Court that they will not reinstate the former policy unless the Court's finding that *Rutan* applies to temporary employees is overturned on appeal. *See also* Document No. 112 at 7 (state officials "desire to continue the practice [of using politi-

cal affiliation as a factor in hiring temporary employees] and to that end will seek appellate review."). However, as the Court's review is limited to the pleadings, this statement of defendants' intent cannot be considered in reviewing the motion for judgment on the pleadings.

6. The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

See *Edelman v. Jordan,* 415 U.S. 651, 659-62, 94 S.Ct. 1347, 1354-55, 39 L.Ed.2d 662 (1974), for a concise summary of the historical basis of the Eleventh Amendment.

injunctive relief in this case because there is "no continuing violation of federal law."[7] Document No. 100 at 7. The underlying policy of the Eleventh Amendment is "that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) (citations omitted). Because of the Eleventh Amendment, states may not be sued in federal court unless they consent in unequivocal terms or unless Congress unequivocally expresses its intent to abrogate the immunity and does so through a valid exercise of power. *Id.* at 68, 106 S.Ct. at 425–26.

An exception to the Eleventh Amendment bar was carved out in the landmark decision *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Young* upheld an injunction prohibiting a state official from enforcing an allegedly unconstitutional statute. The unconstitutional statute was "void" and therefore did not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.* at 160, 28 S.Ct. at 454. Because the State could not authorize the action, the officer "was stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct." *Id.* "The *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of

the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 105, 104 S.Ct. 900, 910, 79 L.Ed.2d 67 (1984) (quoting *Young,* 209 U.S. at 160, 28 S.Ct. at 454).

The basic premise of defendants' Eleventh Amendment argument is that because they have stopped using political affiliation as a factor in hiring temporary workers, there is no longer any federal interest to justify the intervention of this Court to enforce federal law. Although this argument has some superficial appeal, it does not withstand closer scrutiny under the facts of this case.

After the Court issued its July 6 Order, which awarded the defendants qualified immunity and held that *Rutan* applied to temporary employees, the defendants instituted the current hiring policy. Since then, the defendants have conceded that political affiliation was used in hiring temporary employees prior to the July 6 Order, yet they have not clearly stated that the cessation in following that policy is permanent.

 A federal court may issue equitable relief when there is an ongoing *or impending violation* of federal law. *Watkins v. Blinzinger,* 789 F.2d 474, 484 (7th Cir.1986), *cert. denied sub nom. Diamond v. Blinzinger,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987) (citing *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)) (emphasis added). If the defendants had clearly stated their intent to permanently change their policy regarding temporary employees, their argument against awarding equitable relief would be stronger.[8] Furthermore, following the July 6 Order, the defendants were put in the position of possibly

---

7. The distinction between a claim of mootness and a claim that the Eleventh Amendment bars an award of equitable relief is a fine one. This issue was addressed by the Seventh Circuit in *Watkins v. Blinzinger,* 789 F.2d 474 (7th Cir. 1986), where the court held that although the claim was not technically moot because the state had not permanently changed the challenged policy and the plaintiffs sought damages for the period before the new policy was implemented, *id.* at 483, injunctive relief was barred by the Eleventh Amendment because there was "no ongoing violation of federal law." *Id.* at 484. *Watkins* also found declaratory relief was unavailable because it "would have much the same effect as a full-fledged award of damages" because such a

declaration would be *res judicata* on the issue of liability in a subsequent action in state court. *Id.* (citing *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). As discussed below, because the Court awarded the defendants qualified immunity, declaratory relief in this case could not lead to the equivalent of a damages award.

8. In fact, as mentioned above, the defendants have indicated to the Court that they intend to reinstate the challenged policy if this Court's ruling that *Rutan* applies to temporary workers is overturned on appeal. *See infra,* note 5.

losing their qualified immunity if they did not change their policy. When a party, in response to an interlocutory order, refrains from engaging in the challenged practice, yet provides no assurance that the moratorium on implementing that practice is permanent, the federal interest in asserting authority to enforce federal law does not vanish as a result. Therefore, the Court finds the likelihood that the defendants will reinstate the challenged hiring policy is sufficient to escape the Eleventh Amendment bar.

■ Although the defendants focus their Eleventh Amendment analysis on whether there is an ongoing violation of federal law, the conventional focus of Eleventh Amendment jurisprudence, in the context of equitable relief, is whether an award of such relief will lead to the equivalent of a damages award. The possibility of payment of state funds because of a state official's past breach of legal duty has been an essential element in the case law evaluating the propriety of awarding equitable relief under the Eleventh Amendment.

For example, the Supreme Court applied the *Ex parte Young* doctrine in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), a class-action suit challenging the actions of state and county officials administering a federal-state aid program. *Id.* at 653, 94 S.Ct. at 1351. The Court upheld the lower court's grant of prospective injunctive relief, but reversed the award of retroactive payments of statutory benefits, observing that the rule that has evolved is "that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* at 663, 94 S.Ct. at 1356. (citations omitted). The Court found the prospective relief analogous to that awarded in *Ex parte Young*— the state official in both cases was enjoined to conform his future conduct to the requirements of the Constitution. *Id.* at 664, 94 S.Ct. at 1356.

However, the requirement that the state pay a substantial sum of money was barred because the funds to satisfy the award must come from the state treasury; the award more closely resembled monetary damages than the prospective injunctive relief awarded in *Young.* *Id.* at 665, 94 S.Ct. at 1356–57. *See also Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986) ("Relief that in essence serves to compensate a party injured in the past by an action of a state official ... is barred...."); *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 463–64, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945) (holding that a suit seeking a refund of income taxes was barred by the Eleventh Amendment because the refund sought would have been paid out of funds in the state treasury); *MSA Realty Corp. v. State of Illinois,* 990 F.2d 288, 295 (7th Cir.1993) ("[T]he eleventh amendment bars a claim for injunctive relief ... that would require direct payments by the state from its treasury;" declaratory relief denied because it would be analogous to a full-fledged award of damages.); *Granados v. Reivitz,* 776 F.2d 180, 183 (7th Cir.1985) ("*Edelman v. Jordan* made clear that a declaratory and injunction action against a state is barred by the eleventh amendment to the extent that the court decree would order retroactive payments of benefits wrongfully withheld.").

In *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), the Supreme Court held that declaratory relief was barred by the Eleventh Amendment when such a declaration would have the same effect as a "full-fledged award of damages." *Id.* at 73, 106 S.Ct. at 428. The analogy to a damages award arises because the federal declaratory judgment would be *res judicata* in state court on the issue of liability, "leaving the state courts only a form of accounting proceeding whereby damages or restitution would be computed." Such a result would lead to "a partial 'end run'" around [the Court's] decision in *Edelman.*" *Id.*

In the case at hand, any award of equitable relief would not result in an "end run" around *Edelman* or anything comparable to a "full-fledged award of damages." Such an award is precluded by the Court's July 6 Order awarding the defendants qualified immunity. Any equitable relief granted would be prospective only; thus, the Eleventh Amendment bar does not apply. Because

the state would not have to pay money from the state treasury as a result of past violations of federal law there would be no retroactive effect of an award of equitable relief. For these reasons, the Court finds that the defendants are not entitled to judgment in their favor on the pleadings. To the contrary, as discussed in the following section, judgment should be entered in favor of the plaintiff. Accordingly, defendants' motion for judgment on the pleadings is **DENIED** with respect to Count I of plaintiff's second amended complaint.

## V. Judgment for Plaintiff

The next issue to address is whether there remains any material issue of fact that warrants further proceedings in this case. The Court recognizes that the plaintiff has not moved for judgment in his favor. However, the Court has the power to enter such judgment *sua sponte* pursuant to Rule 12(c) if, after the pleadings are closed, the Court determines that there is no material issue of fact presented and that one party is clearly entitled to judgment. *Flora v. Home Fed. Sav. and Loan Ass'n,* 685 F.2d 209, 211 (7th Cir.1982) (citing *Friedman v. Washburn Co.,* 145 F.2d 715, 717 (7th Cir.1944)).

A review of the pleadings shows that there are no disputed issues of material fact in this case. The plaintiff's complaint alleges that the defendants used political affiliation as a factor in hiring temporary highway maintainers. The complaint also alleges that the Supreme Court's decision in *Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) applies to temporary workers. The defendants have admitted that they used political affiliation as a factor in hiring temporary workers (Document No. 98 at 9–12). Thus the only dispute raised by the pleadings is whether *Rutan* applies to temporary workers. This Court resolved that legal question in the July 6 Order ruling on defendants' motion to dismiss. Document No. 80. As a result, the Court finds that there is no genuine issue of material fact in this action and the plaintiff is clearly entitled to judgment as a matter of law based on the pleadings.

## VI. Relief

The Court must next determine the relief to which plaintiff is entitled. The plaintiff has asked for: (1) an injunction prohibiting defendants from hiring highway maintainers based on political affiliation; (2) a declaration that the use of the six-month contract for the position of highway maintainer was a deliberate attempt to circumvent the Supreme Court ruling in *Rutan;* and (3) instatement of plaintiff in a position of highway maintainer at the Illinois Department of Transportation Harrisburg shed. Document No. 97. In assessing the propriety of each of these remedial options, the Court is mindful that, in the context of a federal court granting equitable relief against state officials, "the difference between permissible and impermissible relief 'will not in many instances be that between day and night.'" *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 105, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984) (quoting *Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974)).

With regard to plaintiff's request for injunctive relief,

> the court's power to grant injunctive relief survives discontinuance of the illegal conduct. The purpose of an injunction is to prevent future violations.... But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.

> To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

*United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *accord United States v. DiMucci,* 879 F.2d 1488 (7th Cir.1988). "Courts require 'clear proof' that an unlawful practice has been abandoned, and must guard against attempts to avoid injunctive relief 'by protestations of repentance and reform, especially when abandonment seems timed to anticipate

suit, and there is a probability of resumption.'" *Wilk v. American Medical Ass'n,* 895 F.2d 352, 367 (7th Cir.), *cert. denied, American Medical Ass'n v. Wilk,* 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 524 (1990) (citing *United States v. Oregon State Medical Soc'y,* 343 U.S. 326, 333, 72 S.Ct. 690, 695–96, 96 L.Ed. 978 (1952)).

▌ In the present case, the Court finds it unlikely that the defendants will resume using political considerations in hiring temporary employees unless this Court's holding that *Rutan* applies to temporary workers is overturned on appeal. This finding is based on the defendants' possible loss of qualified immunity if they reinstated the old policy; the threat of personal liability for unspecified damages is a powerful incentive. Moreover, government officials are granted more solicitude than private parties when allegedly illegal conduct has been ceased. *Ragsdale v. Turnock,* 841 F.2d 1358 (7th Cir.1988). Accordingly, the Court declines to award injunctive relief.

▌ The next issue to consider is plaintiff's prayer for a declaration that the use of the six-month contract for the position of highway maintainer was a deliberate attempt to circumvent the Supreme Court ruling in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to grant declaratory relief even though an injunction is not available. *Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 427–28, 88 L.Ed.2d 371 (1985) (citing *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

The Court's July 6th Order held that, under *Rutan,* using political considerations in hiring temporary employees is unconstitutional. The defendants concede that they considered the political affiliation of applicants for temporary employment and there is no indication that the moratorium on the challenged hiring practice is permanent.

The Court finds that an award of declaratory relief is appropriate in the present case. However, a declaration addressing defendants' motive in establishing the challenged policy "would serve no useful purpose as a final determination of rights." *Green,* 474 U.S. at 73, 106 S.Ct. at 428. The defendants' motives for using political affiliation in hiring temporary employees are not relevant. Such a finding would be useful only if damages were still available. As discussed above, the award of qualified immunity precludes an award of damages. Therefore, although the Court will award declaratory relief, the Court declines to address the defendants' motives for instituting the challenged hiring policy. Accordingly, the Court **DECLARES** that defendants use of political affiliation as a criterion for hiring temporary highway maintainers is unconstitutional pursuant to *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

Finally, with regard to plaintiff's prayer for instatement in a position as a temporary highway maintainer, the Court notes that neither party has addressed the propriety of this form of relief in this case. Because the parties should have the opportunity to address this issue before the Court renders a decision on the matter, the Court **ORDERS** the plaintiff to submit a memorandum in support of his request to be instated as a temporary highway maintainer on or before March 31, 1995. The defendants are **ORDERED** to submit a response on or before April 14, 1995. Plaintiff may reply to defendants' response on or before April 21, 1995.

In light of this Order, the Court would also like the parties to address their current positions regarding defendants' motion to modify the Court's Order of January 19, 1994, regarding preservation of documents. (Document No. 74). Specifically, the Court would like the plaintiff to submit a memorandum informing the Court of his view of the need to preserve the records covered by the January 19 Order. The defendants shall also address their current position on the motion. Plaintiff and defendants are **ORDERED** to submit these memoranda on or before March 24, 1995.

Finally, because the end of this litigation is imminent, and the Court's judgment will be appealable in its entirety, the defendants' motion for interlocutory appeal (Document No. 83) is **DENIED**.

## CONCLUSION

The Court **GRANTS** plaintiff's motion to withdraw his motion for leave to amend his complaint (Document No. 95). Defendants' motion for judgment on the pleadings (Document No. 99) with respect to Count II of plaintiff's second amended complaint is **GRANTED**. Defendants' motion for judgment on the pleadings (Document No. 99) with respect to Count I of plaintiff's second amended complaint is **DENIED**. Defendants' motion for interlocutory appeal (Document No. 83) is **DENIED**.

The Court finds that judgment should be entered in favor of the plaintiff on the pleadings. Accordingly, the Court **DECLARES** that defendants use of political affiliation as a criterion for hiring temporary highway maintainers is unconstitutional pursuant to *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). However, the Court denies the request for a permanent injunction. The Clerk of the Court shall enter judgment accordingly when the final issues regarding instatement and preservation of records are resolved.

Plaintiff is **ORDERED** to submit a memorandum in support of his request to be instated as a temporary highway maintainer on or before March 31, 1995. The defendants are **ORDERED** to submit a response on or before April 14, 1995. Plaintiff may reply to defendants' response on or before April 21, 1995.

Plaintiff and defendants are **ORDERED** to submit memoranda regarding the defendants' motion to modify the Court's order regarding preservation of documents (Document No. 74) on or before March 24, 1995.

**IT IS SO ORDERED.**